IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01872-RPM-MEH

JACK MUST,

    Plaintiff,

vs.

AMERICAN FURNITURE WAREHOUSE CO., a Colorado corporation, d/b/a
AMERICAN FURNITURE WAREHOUSE

    Defendant.

---

## EXHIBIT A-7

## ANDREW ZUPPA AFFIDAVIT

**Submitted By Defendant
In Support Of Its Motion For Summary Judgment**

---

Respectfully submitted this 14th day of January, 2008.

    s/ Andrew W. Volin
    **Andrew W. Volin, Esq.**
    SHERMAN & HOWARD L.L.C.
    633 Seventeenth Street, Suite 3000
    Denver, CO 80202
    Telephone: (303) 297-2900
    Facsimile:   (303) 298-0940
    E-Mail:      AVolin@sah.com

    Gary J. Benson, Esq.
    DWORKIN, CHAMBERS & WILLIAMS, P.C.
    3900 E. Mexico Avenue, Suite 1300
    Denver, CO  80210
    Phone:(303) 584-0990
    Fax:(303) 584-0995
    E-mail:gbenson@dnvrlaw.com
    *Attorneys for Defendant
    American Furniture Warehouse*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01872-RPM-MEH
JACK MUST,
    Plaintiff,

vs.

AMERICAN FURNITURE WAREHOUSE CO., a Colorado corporation, d/b/a
AMERICAN FURNITURE WAREHOUSE
    Defendant.

## AFFIDAVIT OF ANDREW ZUPPA

COMES NOW The Affiant, first being duly sworn, and deposes and states of his own personal knowledge as follows:

1.     My name is Andrew Zuppa. I am the General Manager of American Furniture Warehouse ("AFW").

2.     Salary and bonus were not, and are not, linked at AFW to age or seniority.

3.     There were management openings at the Westminster store and other stores while Mr. Must was a management trainee at the Westminster location, but I did not consider Mr. Must's performance strong enough to merit promotion to any of those openings when they occurred.

4.     In June, 2004, when Mr. Must was not there in the evening when I made store visits, I felt that Mr. Must was letting me down after I had so often tried to help him, including recently saving his job after Mr. Buscietta had wanted to fire him for being disrespectful to him.

5.     In June 2004, after hearing from Mr. Ward about Mr. Must's complaints and about Mr. Ward's desire to return to sales rather than work with Mr. Must any longer, I concluded Mr. Must was unhappy as Store Manager, that Mr. Must did not want to work the long hours associated with being a Store Manager, and that his attitude was hurting the store.

1

6.      In July 2004, after the latest episode where the new Assistant General Manager, Mr. Pepper, wanted to fire Mr. Must, I felt I had done all I could for Mr. Must to save his position as Store Manager.  Before this, all the other members of the corporate management team and his own Assistant Store Manager had complained about him: (1) Mr. Jabs had complained about him and had repeatedly cut his bonus; (2) the prior General Manager, Mr. Buscietta, had wanted to fire him the month before for being disrespectful; (3) the Assistant Store Manager, Tom Ward, had reported to me Mr. Must's complaints about management and the company, and asked to return to sales so he would no longer have to work for him; and (4) I felt the problems with the sales force and store sales had continued, even after I had expressly warned Mr. Must that if the problems were not fixed I would bring in someone new.  Despite this background, Mr. Must had upset the new Assistant General Manager Mr. Pepper so much that I had to talk Mr. Pepper out of firing him the day before the busy July 4th holiday weekend.  At this point, I decided Mr. Must could not remain as the Store Manager.

7.      I decided to move Mr. Must back into sales, and Mr. Jabs approved that decision.

8.      Mr. Must's age had nothing to do with the decision to move him from the Store Manager position back into sales.

9.      Moving Mr. Must back into sales was consistent with moving Store Managers Mr. Smatla and Mr. Willey in 2001, as well as other non-Store Managers since then.

10.      I thought Mr. Must could earn as much in sales as he was paid as Store Manager.

11.      I thought that sales would offer Mr. Must a work schedule that required fewer hours; I thought Mr. Must was unhappy about the work schedule expected of a manager, based on the comments by Mr. Ward, Mr. Must's complaint to Mr. Pepper about working on the July 4th holiday, Mr. Must's inability to be there in the evenings every time I made a store visit, and my

recollection that when I first contacted Mr. Must about moving into management, concern about the work schedule was one issue that Mr. Must had raised with me.

12. The work schedule was (and still is) different for store management as opposed to store sales staff. AFW stores are generally open seven days per week, including most holidays. Full-time sales staff generally work only 40 hours per week, spread over morning or evening shifts during the seven day period. Store management, however, work longer hours, usually over 50 hours, spread over morning or evening shifts that start sooner, and end later, than the sales staff shifts.

13. I expected Mr. Must to accept the transfer to sales, as other managers had before, and as I thought Mr. Must was no longer interested in the responsibilities that came with the Store Manager position, and wanted a better work schedule.

14. The multiple checks I brought with me when I met with Mr. Must, paying off his accumulated sick and vacation pay at his manager's salary rate and providing additional pay to ease the transition into sales, were consistent with AFW practice when moving someone from a management job to a sales position. If I had been intending to fire Mr. Must, I would not have brought him checks for additional pay for the rest of the week and for the following week.

15. Prior to the 2004 July 4th holiday, Mr. Ward had already told me that he was not interested in working as the Westminster Store Manager.

16. In April, 2005 (almost 10 months after Mr. Must quit), AFW fired Richard Dawson as the Store Manager at the Southwest location because I believed Mr. Dawson had lied to me about being at the store when he was not, and had instructed a subordinate to lie to me, which followed a period of performance issues.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Andrew Zuppa

STATE OF COLORADO         )
                                              ) ss.
COUNTY OF Douglas      )

    I hereby certify that the foregoing AFFIDAVIT OF ANDREW ZUPPA was subscribed and sworn to before me on this ___ day of January, 2008.

    WITNESS my official hand and seal.

    My commission expires: April 26, 2010.

_____
Notary Public

[SEAL]

My Commission Expires 04/26/2010

4