IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01872-RPM-MEH

JACK MUST,

    Plaintiff,

vs.

AMERICAN FURNITURE WAREHOUSE CO., a Colorado corporation, d/b/a
AMERICAN FURNITURE WAREHOUSE

    Defendant.

---

# EXHIBIT A-12

## CRYSTAL HAYES DEPOSITION TRANSCRIPT EXCERPTS

**Submitted By Defendant
In Support Of Its Motion For Summary Judgment**

---

Respectfully submitted this 14th day of January, 2008.

        s/ Andrew W. Volin
        **Andrew W. Volin, Esq.**
        SHERMAN & HOWARD L.L.C.
        633 Seventeenth Street, Suite 3000
        Denver, CO 80202
        Telephone: (303) 297-2900
        Facsimile:   (303) 298-0940
        E-Mail:      AVolin@sah.com

        Gary J. Benson, Esq.
        DWORKIN, CHAMBERS & WILLIAMS, P.C.
        3900 E. Mexico Avenue, Suite 1300
        Denver, CO  80210
        Phone:(303) 584-0990
        Fax:(303) 584-0995
        E-mail:gbenson@dnvrlaw.com
        *Attorneys for Defendant
        American Furniture Warehouse*

Crystal Hayes

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Case No. 06-CV-01872-RPM-MEH

JACK MUST,

Plaintiff

vs.

AMERICAN FURNITURE WAREHOUSE CO., a Colorado corporation d/b/a/ AMERICAN FURNITURE WAREHOUSE,

Defendant.

---

DEPOSITION OF CRYSTAL A. HAYES

---

PURSUANT TO NOTICE, the above-entitled deposition was taken on behalf of the Plaintiff at 1621 18th Street, Suite 260, Denver, Colorado, on August 31, 2007, at 1:05 p.m., before Dawn E. Eastman (Calderwood), Certified Shorthand Reporter, Registered Professional Reporter, and Notary Public.

1  about the meeting; he was pretty upset.  Apparently,
2  Jack was disrespectful to him in some manner.
3          Q.      Okay.  What else?
4          A.      Nothing else.
5          Q.      And just to be clear about this:  Your
6  entire information about what happened in Mike
7  Buscietta's office comes from Mike Buscietta?
8          A.      Yeah, it came from Mike.  After
9  speaking with Mike and him telling me about the
10 meeting, I did call Mr. Zuppa, asked him:  What
11 happened, you know, is everything okay?  Do you need
12 me to do anything?
13         Q.      Why did you ask him those questions?
14         A.      Because I felt it was my position.
15         Q.      Had Mike -- in your conversation with
16 Mike, had he indicated that he wanted to fire Jack
17 Must?
18         A.      No.  Again, it was just a general
19 conversation about the content of the meeting.
20         Q.      What did Andrew Zuppa respond to you?
21         A.      No, that he was going to take care of
22 it, that I had enough on my plate.
23         Q.      Did he say anything other than:  I'm
24 going to take care of it?
25         A.      No, but it was a very -- I mean, it

Crystal Hayes

Page 96

1  was just a very brief conversation about that.
2       Q.    So it sounds like this was a telephone
3  conversation?
4       A.    Yeah.
5       Q.    And this was the only subject of that
6  conversation?
7       A.    Yeah.
8       Q.    Anything else that would be, in your
9  mind, responsive to AFW's statement that you are one
10 of the people that knows about Jack Must speaking
11 negatively about the company?
12      A.    I think that would be it.
13      Q.    So far I haven't heard anything
14 negative about the company.  I've heard about Mike
15 Buscietta having an argument with Jack Must.
16            MR. BENSON:  Object to the form of the
17 question.
18            THE DEPONENT:  Again, being
19 disrespectful to a general manager is pretty
20 negative.
21      Q     (By Mr. Buchanan) Well, it may be a
22 negative action.  What I'm looking for is a negative
23 statement about the company, as distinct from Mike
24 Buscietta.
25      A.    That would be it.

1    afterwards.
2         Q.    How soon?
3         A.    Can't say.
4         Q.    There would be a personnel master file
5    input, et cetera, sheet for when he left; would
6    there not?
7         A.    There should be, yes.
8         Q.    If I ask for it, would you --
9         A.    Absolutely.
10        Q.    -- be able to produce it?
11        A.    Yes.
12        Q.    Do you know why he left?
13        A.    I believe he found another position
14   elsewhere.
15             MR. BENSON:  Can I have a look at
16   this?
17        Q.    (By Mr. Buchanan)  Do you know what
18   position and where?
19        A.    I don't.
20        Q.    There's another group of documents,
21   and I'm just going to walk through these, at least
22   some of these.  Starting at AFW-MUST 0153, this
23   pertains to Carl Wiley or Willey --
24        A.    Willey.
25        Q.    -- Willey, being moved from manager of

1  Store 20 to a sales position at Thornton; correct?
2      A.   Correct.
3      Q.   And that occurred on May 14, '01, the
4  same day Mr. Smatla was moved to a sales position;
5  correct?
6      A.   Yes, appears to be so.
7      Q.   And Mr. Willy had been the manager of
8  Store 20, which was the Southwest store?
9      A.   Yes.
10     Q.   Do you know how long Mr. Willy stayed
11 in sales, if at all?
12     A.   Quite sometime.  I think it was
13 possibly -- I would say two years.
14     Q.   Is he still with the company?
15     A.   No, he's not.
16     Q.   Why not?
17     A.   He left to go into real estate.
18     Q.   In the Denver area?
19     A.   Yes.
20     Q.   To your knowledge, and without
21 betraying any attorney-client privilege, do you know
22 whether he's been contacted in connection with this
23 case?
24     A.   I don't believe so, but I have no
25 knowledge.

Crystal Hayes

Page 109

1    Q.    AFW-MUST 0519 pertains to Fred Bode;
2  correct?
3    A.    Correct.
4    Q.    I'm sorry, I'm holding it upside down,
5  so I can't tell.  What does that reflect?
6    A.    You're looking at new employee codes.
7  He was a sales manager at our Compark store.  He
8  went back into sales at our Southwest store.
9    Q.    As of 5/24/04?
10   A.    Yes.
11   Q.    Do you know why?
12   A.    He requested it.
13   Q.    This was a voluntary thing on his
14 part?
15   A.    Yes.
16   Q.    Do you know why he requested it?
17   A.    He was having some medical issues with
18 a hip.
19   Q.    But for his medical issues and
20 request, would he have been -- to your knowledge,
21 would he have been free to remain the sales manager?
22   A.    I believe so, yes.
23   Q.    Next page -- and I'm just going to
24 read the page number -- 9520 pertains to Robert
25 Moore.  And as I'm reading this, this reflects him