**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 06-cv-01872-RPM-MEH

JACK MUST,

    Plaintiff,

vs.

AMERICAN FURNITURE WAREHOUSE CO., a Colorado corporation, d/b/a
AMERICAN FURNITURE WAREHOUSE

    Defendant.

_____

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SANCTIONS**

_____

Plaintiff, Jack Must, by and through his attorneys, Buchanan, Jurdem & Cederberg, P.C., hereby submits his Brief in Opposition to Defendant's Motion for Sanctions, filed January 14, 2008 ("Defendant's Motion").

**INTRODUCTION**

Defendant's Motion seeks the draconian sanction of precluding Plaintiff's testimony regarding the last two months of his employment with Defendant American Furniture Warehouse ("AFW"). It requests this sanction based upon Plaintiff's alleged destruction of documents, which documents are unspecified as to quantity or content. Indeed, Defendant has failed to show that any document which Plaintiff may have possessed during his employment with AFW, but no longer does, contained anything which is even relevant to this case, and therefore is completely unable to demonstrate any

prejudice from any alleged spoliation of evidence. Accordingly, no sanction is appropriate, let alone the draconian one of precluding Plaintiff's testimony regarding the last two months of his employment with AFW.

## STATEMENT OF FACTS

Plaintiff produced the documents that were in his possession as of the date of his termination in his original Rule 26(a)(1) Disclosures, which documents were Bates numbered 000001-000029. Those consisted of AFW's Personnel Policy Manual, a sales report for June, 2004, Memo No. 2803 dated June 14, 2004, Memo No. 2809 dated June 21, 2004, a copy of a facsimile transmission dated July 2, 2004, seven final checks, including salary and vacation and sick pay received by Plaintiff Must at the time of his termination by Andrew Zuppa (see **Exhibit 22** to Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, hereinafter "Plaintiff's Brief"), and handwritten notes which Plaintiff had prepared between June 2 and July 6, 2004 (see **Exhibit 29** to Plaintiff's Brief). Plaintiff also produced a copy of a cassette tape recording of a conversation between himself, Andrew Zuppa and Tom Ward, which had occurred on June 16, 2004, a transcript of which is attached as **Exhibit 16** to Plaintiff's Brief. See **Exhibit 1**, hereto, Affidavit of Jack Must, ¶6.

Defendant's Motion focuses on other unspecified documents which it claims existed as of the date of Jack Must's termination. The passages of Mr. Must's deposition cited by AFW focus on notes which Mr. Must took at managers' meetings conducted by AFW. Mr. Must did attend AFW managers' meetings on a monthly basis, at which

2

attendance by store managers was mandatory. Those meetings were conducted and attended by senior management, including, but not limited to, CEO Jake Jabs, General Manager Mike Buscietta, and Assistant General Manager Andrew Zuppa. Mr. Must acknowledges that he would typically take notes at such meetings, and is under the impression that most other store managers did as well. The purpose of Mr. Must taking his notes was to have a document he could go over with his Assistant Manager, Tom Ward and the "Turnkey" Manager, Joe Mossuto when he returned to the Westminster Store following the managers' meetings, and to occasionally remind himself of information to be shared directly with the sales staff. Typical content of the managers' meetings which he would record in his notes were details regarding upcoming sales and advertising, and new merchandise which was coming to the stores. See **Exhibit 1**, ¶¶2 and 3.

However, after Mr. Must had shared the content of the managers' meetings with his managers, the notes from those meetings had no ongoing value to him, and he would typically throw them away within a few days of the managers' meeting.

With respect to the specific managers' meeting on June 2, 2004, upon which AFW focuses, Mr. Must believes he took notes at that meeting, and has no reason to believe that those notes were any different or longer than his usual notes of such meetings. He also remembers nothing occurring at the managers' meeting itself, as distinct from a separate meeting he had with Mr. Zuppa and Mr. Buscietta following that meeting, which is relevant in any way to his claims here. Throughout the depositions given by AFW

3

senior management in this case, as well as the affidavits each of them prepared in support of AFW's Motion for Summary Judgment, Defendant does not contend otherwise. Thus, there is absolutely no evidence in this case that Mr. Must's notes taken at that meeting would likely reflect anything of significance in this case. In any event, although he has no specific memory of having done so, Mr. Must believes he probably threw his notes away within a few days of the managers' meeting, and remembers that they were not on his legal pad in his managers' meeting file the day he was terminated. See, **Exhibit 1**, ¶5.

Furthermore, as noted, the managers' meetings were attended by senior management of AFW, as well as substantially all of the other store managers. Attendance at the managers' meetings was mandatory, and it is Jack Must's impression that all managers took at least some quantity of notes at the managers' meetings. See, **Exhibit 2**, ¶2. Accordingly, if it is now Defendant's contention that something of significance occurred at the managers' meeting itself, there would be additional sources of that information from either senior AFW managers or other store managers.

## ARGUMENT

**I.    NO SANCTION IS APPROPRIATE FOR PLAINTIFF'S ALLEGED SPOLIATION OF UNSPECIFIED DOCUMENTS OF UNKNOWN CONTENT, AS TO WHICH AFW CAN SHOW NO PREJUDICE.**

This Court has discretion to order an appropriate sanction to remedy a demonstrated spoliation of evidence, which order could only be reversed upon a showing of abuse of such discretion. See, *103 Investors I, L.P. v. Square D Co.*, 470 F3d, 985, 989 (10th Cir. 2006); *Jordan F. Miller Corporation v. Mid-Continent Aircraft Service, Inc.*,

139 F.3d 912 (table decision), 1998 WL 68879*7 (10th Cir. 1998)(unpublished opinion, but cited with approval in *103 Investors, supra*).

Perhaps the most detailed discussion of the law of spoliation in this circuit occurred in the unpublished opinion in *Jordan F. Miller, supra*, in which the court, after surveying the case law from other circuits, summarized:

> When deciding whether to sanction a party for the spoliation of evidence, courts have considered a variety of factors, two of which generally carry the most weight: (1) the degree of culpability of the party who lost or destroyed the evidence, and (2) the degree of actual prejudice to the other party. *See, e.g., Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994); *Dillon*, 986 F.2d at 267-68; *Vazquez-Corales v. Sea-Land Serv., Inc.*, 172 F.R.D. 10, 13-14 (D.P.R. 1997) (collecting cases).

1998 WL 68879 at *4.

In *Aramburu v. The Boeing Company*, 112 F.3d 1398, 1407 (10th Cir. 1997), the plaintiff alleged he had been terminated because of his Mexican-American ancestry, in violation of Title VII, 42 U.S.C. §1981 and state anti-discrimination laws. Defendant, on the other hand, contended that it had discharged plaintiff because of excessive absenteeism. The evidence was that plaintiff's supervisor had removed his attendance record for one calendar year from his personnel file and subsequently misplaced it, and it could not be produced in the lawsuit. Plaintiff contended that he was therefore entitled to a favorable inference on the issue of pretext in connection with opposing defendant's motion for summary judgment. The court, noting that there was no showing of bad faith on the supervisor's part, and that the defendant had produced other records pertaining to

5

plaintiff's attendance, including a computer record which indicated plaintiff's absences during the same calendar year for which the other records had been lost, held that plaintiff was not entitled to an adverse inference. 112 F.3d at 1407.

Here, while Defendant AFW seeks to suggest some nefarious intent on plaintiff's part, it is far from clear that any particular documents containing even arguably relevant information have been destroyed. While Plaintiff Must believes that he took some notes at the managers' meeting of June 2, 2004, he also believes, based upon his usual practice, that he threw them away within a few days of the managers' meeting, and long before he was terminated. More to the point, there is absolutely no evidence that any such notes would have contained anything of relevance to this case. Neither party contends that anything of significance was said or occurred at the managers' meeting of June 2, 2004, as distinct from the separate and private meeting that occurred thereafter between Plaintiff, Mike Buscietta and Andrew Zuppa. Defendant has offered no proof whatsoever that anything that occurred at the managers' meeting itself might conceivably had been recorded in some fashion in Plaintiff Must's notes. Accordingly, it cannot be argued that Plaintiff was negligent, let alone acted in bad faith, if he either threw his notes away, or otherwise allowed them to be lost after they had served their only purpose of refreshing his recollection in discussing the managers' meetings with his assistant managers, or sharing appropriate information with his sales staff.

Moreover, as in the *Aramburu* case, even if Defendant AFW contended that something of significance to this case had occurred in the managers' meeting of June 2,

6

2004, it is clear that there may be several other possible repositories of any such information, including the recollections of AFW's senior management who attended the meeting, any agenda or minutes pertaining to the meeting, or the notes which were presumably taken by other store managers. In addition to not specifying any relevant content of that meeting, Defendant has also done nothing to demonstrate that there is no other record of it.

This case is readily distinguishable from *103 Investors I, L.P. v. Square D Co.*, 470 F3d, 985 (10th Cir. 2006) upon which Defendant AFW principally relies. In that case, the plaintiff asserted that a fire which damaged its building had been caused by a malfunction in an electrical distribution system component known as a "busway." Specifically, plaintiff alleged that the busway had lacked a warning instructing owners to keep it free of water and other contaminants. At trial, there was a conflict in the testimony as to the critical factual issue of whether a warning label which the manufacturer apparently routinely applied to such busways was, in fact, in place on the busway in question when it left the defendant manufacturer. However, the evidence also indicated that plaintiff's investigators had access to the busway after the fire and were able to investigate and evaluate it, but then, without notice to the defendant, threw away 50 to 60 feet of it, retaining only a 4-foot piece which would not have contained the allegedly missing warning in any event. Id. at 988. On the foregoing record, the Tenth Circuit held that the trial court had not abused its discretion in striking the testimony of the building maintenance supervisor who testified that he had not seen a warning on the busway, even

7

though there had been no showing of bad faith on plaintiff's part in throwing away the vast majority of the busway. In so holding, the court noted that "defendant was prejudiced because *there was no substitute for a direct visual examination of the busway*." Id. at 989. (emphasis supplied).

Here, in marked contrast, even if Defendant AFW were to contend (which it has not) that something of relevance to the issues in this case occurred during the managers' meeting of June 2, 2004, clearly there are numerous potential substitutes for Plaintiff's notes of that meeting, including the notes that any one of the other nine store managers, or the notes, agenda, minutes, or recollection of senior AFW management who ran the meeting. Unlike in the case of a product which has failed, such as *103 Investors, supra*, where the remnants or wreckage are often not only the best, but virtually the only evidence of what occurred and why, in the case of a meeting attended by many participants, the recollections or notes of any one of those participants may be sufficient to prove what occurred during that meeting. Here, not only has AFW not contended that anything of significance transpired at the June 2 managers' meeting, it has also not shown that any notes Plaintiff Must took during that meeting were the best or only evidence of what occurred. Accordingly, Defendant has failed to demonstrate any prejudice.

## CONCLUSION

Defendant's Motion for Sanctions is an illustration of the old adage that "the best defense is a good offense." Having utterly failed to document any of the long list of complaints it now purports to have about Jack Must's performance as a store manager,

AFW now seeks to prevent him from testifying about two months' worth of events, based solely on his innocent discarding of notes which amounted to no more than a personal "to do" list, and which AFW cannot demonstrate were even arguably relevant to any claim or defense in this case.  Accordingly, Defendant's Motion must be denied in its entirety.

DATED this 28th day of March, 2008.

BUCHANAN, JURDEM & CEDERBERG, P.C.

*s/ Ross B.H. Buchanan*
By: _____
    Ross B.H. Buchanan, No. 12184

Eighteenth Street Atrium
1621 18th Street, Suite 260
Denver, Colorado  80202
Telephone: (303) 297-2277

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2008, I electronically filed the foregoing **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Andrew W. Volin, Esq.
Avolin@sah.com

Gary J. Benson, Esq.
gbenson@dnvrlaw.com

*s/ Laura K. Mais*
_____
Laura K. Mais
Legal Assistant to Ross Buchanan